**LINN COOPERATIVE OIL COMPANY, Appellee,**

v.

**NORWEST BANK MARION, N.A., f/k/a First National Bank of Marion, Appellant.**

No. 88–968.

Supreme Court of Iowa.

Aug. 16, 1989.

Roger W. Stone and Linda M. Kirsch of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellant.

Gregory D. Kingery of Ackley, Kopecky & Kingery, Cedar Rapids, for appellee.

Considered by LARSON, P.J., and CARTER, NEUMAN, SNELL, and ANDREASEN, JJ.

CARTER, Justice.

The defendant, Norwest Bank of Marion (the bank), appeals from a decision finding that it had improperly converted to its own use the proceeds of a grain sale subject to the security interest of the plaintiff, Linn Cooperative Oil Company. The bank contends that, because it received these proceeds as a payment in the ordinary course of business, its receipt of the funds was free of any claim of the plaintiff. After considering the arguments of the parties, we reject this contention and affirm the judgment of the district court.

The challenged transaction occurred in October 1985 at which time both the plaintiff and the bank were creditors of John and Diana Lensch. The Lensches are not parties to the present litigation. The plaintiff held a perfected security interest at that time in grain grown by the Lensches on a 194–acre parcel of land in Linn County. The bank, which held a security interest in some of the Lensches' assets, had no security interest in grain grown on the 194–acre tract.

The Lensches harvested 6953 bushels of corn from the 194–acre tract in October 1985 and delivered the corn to a grain elevator. They received as payment three checks totaling $14,044.83. The bank had previously notified the elevator that it had a security interest in all of the Lensches' farm products (an assertion which was incorrect as to the grain from the 194–acre parcel). Based on that notification, the elevator included the bank as a joint payee on the checks issued for the three October grain sales.

Diana Lensch took the three checks to the bank where they were endorsed by her and by a bank officer. After depositing the checks into the Lensch checking account at the bank, Diana Lensch wrote two checks to the bank in payment of an antecedent obligation. She also signed a debit memo transferring additional funds from the checking account to the bank. The total amount received by the bank from these transactions was $9452.06.

The bank applied the $9452.06 against interest owed to it by the Lensches on existing loans. A vice president of the bank testified at trial that the bank would not have endorsed the checks for deposit into the Lensches' checking account without some understanding that this amount would be withdrawn from that account forthwith and applied on the accrued loan interest.

The district court found that the action of the bank constituted a conversion of funds subject to plaintiff's security interest. It rejected the bank's argument that it took the funds in the ordinary course of business and that, consequently, the encumbered proceeds which were traced to it were free from plaintiff's lien. In making this argument in the district court and on this appeal, the bank relies almost entirely on the language of official comment, subd. 2(c) to Uniform Commercial Code section 9–306 (Iowa Code § 554.9306 (1987)). That comment states, in part:

Where cash proceeds are covered into the debtor's checking account and paid out in the operation of the debtor's business, recipients of the funds of course take free of any claim which the secured party may have in them as proceeds.

Noticeably absent from the bank's argument is any effort to tie the quoted language from the comment (which appears only in a definitional section of the UCC) to

some relevant statutory provision in the Uniform Commercial Code dealing with perfected security interests in proceeds. Militating against the bank's contention is the language of Iowa Code section 554.9201, which provides:

> Except as otherwise provided by this chapter a security agreement is effective according to its terms between the parties, *against purchasers of the collateral and against creditors.*

(Emphasis added.) The court in *Citizens National Bank v. Mid–States Development Co.*, 177 Ind.App. 548, 556–57, 380 N.E.2d 1243, 1248 (1978), opined that the effect of this section is "to give the Chapter 9 secured party ... priority over 'anyone, anywhere, anyhow' except as otherwise provided by the remaining Code priority rules." *Id.* at 557, 380 N.E.2d at 1248 (citing Special Project, *The Priority Rules of Article Nine*, 62 Cornell L.Rev. 834, 842 (1977)). Within the context of this conclusion, we are unable to conclude that the official comment accompanying section 554.9306 rises to the status of a Code priority rule.

Also militating against the bank's position is the language of Iowa Code section 554.9205 which provides that "[a] security interest is not invalid ... by reason of liberty in the debtor to use, commingle or dispose of all or part of the collateral ... or dispose of proceeds...." Section 554.9306(2) adds that the security "also continues in any identifiable proceeds including collections received by the debtor."

The legal proposition the bank seeks to establish in the present case is very similar to the protection accorded buyers of goods subject to security interests who have purchased in the ordinary course of business. The protection which section 554.9307 affords those parties does not extend to transfers in satisfaction of an antecedent money debt. *First State Bank v. Shirley Ag Serv., Inc.*, 417 N.W.2d 448, 455–56 (Iowa 1987). When encumbered collateral is applied on an antecedent obligation, the transferor's ability to satisfy secured creditor's claims is reduced proportionately. That result occurs in transfers of cash proceeds collateral to the same extent as it occurs in transfers of goods subject to a security interest. The opportunity for the transferee "to bootstrap himself into priority over a creditor with an otherwise superior secured interest," *First State Bank*, 417 N.W.2d at 455, is the same in both situations.

The bank's rights in the present transaction perhaps may be measured best by comparison with those cases where a depositary bank, without knowledge of a security interest in proceeds deposited with it, has exercised a right of setoff against such funds for application on a depositor's antecedent obligation. In those situations, secured creditors with a lien on proceeds have prevailed over the banks. *Coachmen Indus. v. Security Trust & Sav. Bank*, 329 N.W.2d 648, 650 (Iowa 1983); *Citizens Nat'l Bank*, 177 Ind.App. at 554–58, 380 N.E.2d at 1247–49; *Associates Discount Corp. v. Fidelity Union Trust Co.*, 111 N.J.Super. 353, 357–58, 268 A.2d 330, 332 (1970).

No reason has been suggested for reaching a different result in a transaction in which the deposited funds are transferred to the depositary bank by affirmative action of the depositor through issuing a check or debit memo. The decision in *Brown & Williamson Tobacco Corp. v. First National Bank of Blue Island*, 504 F.2d 998, 1003–04 (7th Cir.1974), suggests that no distinction should be made. In that case, a transfer of funds to the depositary bank via debit memo was held to be subject to the interest of a secured creditor in "proceeds collateral" included in the transfer. We believe a similar result should prevail in the present case. The judgment of the district court is affirmed.

AFFIRMED.